ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL XI

| | | |
|---|---|---|
| HULA PROPERTIES, INC.<br><br>Apelante<br><br>v.<br><br>SUCN. DE DOÑA ANASTACIA LÓPEZ FLORES Y OTROS<br><br>Apelados | KLAN202301047 | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de Caguas<br><br>Caso Núm.: CG2019CV04448<br><br>Sobre: Sentencia Declaratoria, Accesión |

Panel integrado por su presidenta, la Juez Brignoni Mártir, el Juez Candelaria Rosa, la Jueza Álvarez Esnard y la Jueza Díaz Rivera.

Díaz Rivera, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 22 de abril de 2024.

Comparece ante *nos*, Hula Properties, Inc. (Hula o Apelante) y nos solicita que revisemos la *Sentencia* emitida el 14 de marzo de 2023 y notificada el 16 de marzo de 2023, por el Tribunal de Primera Instancia (TPI o foro primario), Sala Superior de Caguas. Mediante dicho dictamen, el TPI declaró *No Ha Lugar* la *Moción de Sentencia Sumaria,* que presentó Hula y, en consecuencia, desestimó la *Demanda* de epígrafe.

Por los fundamentos que expondremos a continuación, se revoca en parte y se confirma en parte la *Sentencia* apelada.

**I.**

El 2 de diciembre de 2019, Hula presentó una *Demanda* en contra de la Sucesión de Doña Anastacia López Flores (Sucesión o Apelada) sobre sentencia declaratoria y accesión. En síntesis, Hula alegó haber adquirido del Gobierno de Puerto Rico un terreno sito en el Municipio de Aguas Buenas en el cual ubica una edificación que presuntamente había sido construida por la parte apelada a sabiendas de que el terreno le pertenecía al Estado. Así, le solicitó al foro de instancia que determinara que el terreno en el cual

ubicaba la edificación era de su propiedad. Además, le solicitó al foro que decretara la mala fe de la parte apelada en tanto y en cuanto la edificación había sido construida a sabiendas de que se trataba de suelo ajeno y, en cualquier caso, la prescripción adquisitiva no operaba en contra del Estado.

Posteriormente, el 20 de diciembre de 2019, la Sucesión presentó una *Moción en Solicitud de Desistimiento y Conversión a Procedimiento Ordinario; y se Permita Tiempo Razonable para Contestar Demanda, Sentencia Declaratoria*. En esta, adujo que la controversia no podía ventilarse como sentencia declaratoria, sino que se debía realizar una conversión al procedimiento ordinario. Añadió que, el mecanismo de sentencia declaratoria era inadecuado para resolver la controversia planteada.

Oportunamente, el 27 de diciembre de 2019, Hula presentó una *Oposición a Moción en Solicitud de Desistimiento [...]*. Subsiguientemente, el 17 de enero de 2020, el TPI emitió una *Resolución* mediante la cual declaró *No Ha Lugar* la solicitud de desestimación que presentó la Sucesión y determinó que el procedimiento es ordinario de su faz. El 24 de febrero de 2020, la Sucesión presentó una *Contestación a Demanda*.

Luego de varios incidentes procesales, el 9 de febrero de 2021, las partes presentaron el *Informe de Conferencia con Antelación a Juicio*. Así las cosas, el 8 de marzo de 2021, Hula presentó una *Moción de Sentencia Sumaria*. En la misma, solicitó que se dictase sentencia sumaria por no existir hechos materiales en controversia. Acentuó que era el titular del terreno en cuestión, que la edificación de la parte apelada ubicaba en ese terreno y que esa edificación había sido construida a sabiendas de que el terreno le pertenecía al Estado.

El 21 de junio de 2022, la Sucesión presentó una *Moción Informativa en Cumplimiento de Orden y en Oposición a que el*

*Presente Caso se Resuelva Sumariamente.* Acto seguido, el 9 de julio de 2022, Hula presentó una *Oposición a Escrito de la Parte Demandada [...].* Sostuvo que el escrito presentado por la Sucesión incumplía con las disposiciones de la Regla 36.3 de Procedimiento Civil, 32 LPRA Ap. V. R. 36.3, por lo cual, su solicitud de sentencia sumaria debía considerarse sometida sin oposición y que procedía declararla con lugar.

El 14 de marzo de 2023, el TPI emitió una *Sentencia* notificada el 16 de marzo de 2023, mediante la cual desestimó la *Demanda* sin perjuicio. En dicha *Sentencia,* el foro primario concluyó que:

> [S]e **DESESTIMA SIN PERJUICIO** la presente acción por no ser el mecanismo de sentencia declaratoria el procedimiento adecuado para tramitar la controversia central que debe ser dilucidada y adjudicada antes de tomar una determinación sobre si proceden o no – como cuestión de hecho y de derecho – los remedios específicos solicitados.[1]

El TPI fundamentó su determinación aclarando que "para contestar la interrogante sobre los límites y la cabida del terreno de Hula, se requiere un procedimiento específico para la fijación de la cabida y su rectificación",[2] por estimar que emitir una sentencia declaratoria reiterando la información que se desprende de la Escritura de Compraventa no pondría fin a la controversia.

El foro primario igualmente dispuso sobre la *Moción de Sentencia Sumaria.* A su entender, era improcedente dictar sentencia sumaria por ser evidente la existencia de hechos materiales en controversia, específicamente: (1) los límites reales del predio comprado por Hula y su cabida; (2) los límites del predio donado por la Junta Escolar; (3) a quién pertenecía el terreno donde se encuentra la estructura de la Sucesión; y, (4) si la Sucesión advino dueña del predio por ocuparlo por más de sesenta (60) años, con el conocimiento de la comunidad y del Gobierno Municipal y Estatal.

---

[1] *Sentencia* de 14 de marzo de 2023, pág. 16.
[2] *Id.* en la pág. 15.

Consecuentemente, el 10 de abril de 2023, Hula presentó una *Moción de Reconsideración.* Así, el 19 de octubre de 2023, el TPI emitió una *Resolución* mediante la cual declaró *Sin Lugar* la solicitud de reconsideración.

Inconforme, el 22 de noviembre de 2023, Hula presentó un *Recurso de Apelación* y señaló la comisión de los siguientes errores:

> **PRIMER SEÑALAMIENTO DE ERROR: ERRÓ EL TPI AL IGNORAR LA LEY DEL CASO Y DECRETAR LA DESESTIMACIÓN SIN PERJUICIO DE LA DEMANDA PRESENTADA POR HULA BAJO EL FUNDAMENTO DE QUE EL MECANISMO DE SENTENCIA DECLARATORIA NO ERA EL ADECUADO PARA ATENDER LA CONTROVERSIA ANTE SU CONSIDERACIÓN.**

> **SEGUNDO SEÑALAMIENTO DE ERROR: ERRÓ EL TPI AL DECLARAR NO HA LUGAR LA MOCIÓN DE SENTENCIA SUMARIA PRESENTADA POR HULA Y CREAR *SUA SPONTE* CONTROVERSIAS DE HECHO Y DERECHO SOBRE ASUNTOS QUE FUERON EXPRESAMENTE ESTIPULADOS POR LAS PARTES.**

Examinada la *Apelación,* este Tribunal emitió una *Resolución* el 11 de diciembre de 2023, concediéndole un término de treinta (30) días a la parte apelada para que expresara su posición al recurso. El 20 de diciembre de 2023, la Sucesión presentó una *Solicitud de Desestimación por Falta de Jurisdicción de esta Honorable Superioridad.* En esta adujo que la parte apelante incurrió en deficiencias insubsanables que privan a este Tribunal de jurisdicción, en específico, arguye que la Apelante "incumplió con el requisito de notificación, de copia fiel y exacta del *Recurso de Apelación* y su apéndice, a todas las partes del caso y en fecha simultánea a su radicación, toda vez que no consta que el recurso fuese notificado a la parte compareciente y suscribiente".[3] Señaló la Sucesión que sus miembros no fueron notificados por medio alguno, fuese este electrónico, correo postal o entrega personal.

---

[3] *Solicitud de Desestimación por Falta de Jurisdicción de esta Honorable Superioridad,* pág. 5.

En respuesta, la Apelante presentó su *Oposición a Solicitud de Desestimación por Falta de Jurisdicción de esta Honorable Superioridad* el 10 de enero de 2024. En esta argumentó que contrario a lo que alega la Apelada, la Regla 13 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 13*,* no exige que el recurso sea notificado a las partes directamente cuando estos posean representación legal, como ocurre en el presente caso.

Posteriormente, esta curia declaró *No Ha Lugar* la solicitud de desestimación por falta de jurisdicción el 18 de enero de 2024. Inconforme, la parte apelada presentó una *Solicitud de Reconsideración* el 25 de enero de 2024. Por su parte, la Apelante presentó su *Oposición a Solicitud de Reconsideración* el 31 de enero de 2024. Luego de analizadas ambas mociones, este Tribunal declaró *No Ha Lugar* la reconsideración el 5 de febrero de 2024 y otorgó término de veinte (20) días para que la parte apelada presentara su alegato en oposición. Luego de concedida una prórroga para la presentación del escrito, la parte apelada finalmente presentó su alegato el 21 de marzo de 2024.

Con el beneficio de la comparecencia de ambas partes, procedemos a exponer el marco jurídico.

**II.**

**A. Ley del Caso**

En nuestro acervo jurídico "los derechos y obligaciones adjudicadas en el ámbito judicial, mediante dictamen firme, constituyen la ley del caso". *MGMT. Adm. Servs. Corp. v. E.L.A.,* 152 DPR 599, 606 (2000) (citando a *In re: Tormos Blandino*, 135 DPR 573 (1994)). Esta doctrina, más que constituir un mandato inflexible, recoge la costumbre deseable de respetar como finales aquellas controversias sometidas, litigadas y decididas por un tribunal dentro de un caso. *Sociedad Legal de Gananciales v. Pauneto*, 130 DPR 749, 754 (1992). *En Félix v. Las Haciendas*, 165 DPR 832

(2005), nuestro Tribunal Supremo expuso que "las determinaciones de un tribunal apelativo constituyen la ley del caso en todas aquellas cuestiones consideradas y decididas". *Id.*, pág. 843 (citando a *Secretario del Trabajo v. Tribunal Superior*, 95 DPR 136, 140 (1967)). Dichos pronunciamientos, de ordinario, "obligan tanto al tribunal de instancia como al que las dictó si el caso vuelve a su consideración". *Id.* Estos dictámenes judiciales, que constituyen la ley del caso, incluyen todas aquellas cuestiones finales consideradas y decididas por el Tribunal. No obstante, esta doctrina procede, solamente, cuando exista una decisión final de la controversia en sus méritos. *Cacho Pérez v. Hatton Gotay y otros*, 195 DPR 1, 10 (2016). Por consiguiente, las controversias previamente dirimidas y adjudicadas por el foro primario o por un tribunal apelativo no pueden reexaminarse. *Id.*, pág. 9. Es decir, dichos asuntos no pueden reevaluarse, pasado el periodo provisto para la reconsideración y para la revisión, a menos que las determinaciones previas sean erróneas o puedan causar una grave injusticia. *In re Fernández Díaz*, 172 DPR 38, 43- 44 (2007).

Esto último, porque doctrina no es un mandato invariable o inflexible. *Rodríguez Ocasio v. ACAA, supra*, pág. 864. Más bien, es una norma que dirige la discreción del tribunal, sin limitar su poder. *Íd.* Por ello, se ha resuelto que, en situaciones excepcionales, si la controversia o caso regresa al foro en cuestión y éste entiende que su decisión previa es errónea y/o puede causar grave injusticia; podría tomar otra determinación con la finalidad de "resolver de forma justa". *Berkan v. Mead Johson Nutrition Puerto Rico, Inc., supra*, pág. 201. Es decir, los tribunales pueden descartar la doctrina de la ley del caso sólo cuando se atente contra los principios básicos de la justicia. *Hon. David Noriega Rodríguez v. Hon. Rafael Hernández Colón, Gobernador de Puerto Rico y Otros*, 135 DPR 406 (1994)*; Graciani Miranda Marchand*, 130 DPR 919, 931 (1992)

(Énfasis suplido). Como ha dispuesto nuestro Tribunal Supremo, "[s]e trata de una doctrina al servicio de la justicia, no la injusticia; no es férrea ni de aplicación absoluta. Por el contrario, es descartable si conduce a resultados "manifiestamente injustos"". *Hon. David Noriega Rodríguez v. Hon. Rafael Hernández Colón, Gobernador de Puerto Rico y Otros, supra.*

El Tribunal Supremo ha dicho que los Tribunales de Primera Instancia "deben realizar el esfuerzo máximo posible por evitar la emisión de dictámenes contradictorios e inconsistentes". *Núñez Borges v. Pauneto Rivera, supra.* Así, se garantiza un trámite ordenado de los litigios, y la estabilidad y la certeza de los derechos y obligaciones de las partes.

**B.    Sentencia Declaratoria**

La Regla 59 de Procedimiento Civil, 32 LPRA Ap. V, R.59, establece que una sentencia declaratoria "es un mecanismo remedial y profiláctico que permite anticipar la dilucidación de los méritos de cualquier reclamación ante los tribunales, siempre y cuando exista un peligro potencial contra quien la solicita". Alcalde y municipio de Guayama v. ELA, 192 DPR 329, 333 (2015) (citando a *Sánchez et al. v. Srio. de Justicia et al.*, 157 DPR 360, 383–384 (2002)). La precitada regla expone que "[e]l Tribunal de Primera Instancia tendrá autoridad para declarar derechos, estados y otras relaciones jurídicas, **aunque se inste o pueda instarse otro remedio**". 32 LPRA Ap. V, R.59.1. (énfasis suplido). Añade la regla que [n]o se estimará como motivo suficiente para atacar un procedimiento o una acción el que se solicite una resolución o sentencia declaratoria. La declaración podrá ser en su forma y efectos, afirmativa o negativa, y tendrá la eficacia y el vigor de las sentencias o resoluciones definitivas." *Id.*

No obstante, "el Tribunal podrá negarse a dar o a registrar una sentencia o decreto declaratorio cuando tal sentencia o decreto,

de ser hecho o registrado, no haya de poner fin a la incertidumbre o controversia que originó el procedimiento. 32 LPRA Ap. V, R.59.3.

La Regla 59.2 inciso (c) aclara que "[l]a enumeración hecha en los incisos (a) y (b) de esta regla, no limita ni restringe el ejercicio de las facultades generales conferidas en la Regla 59.1 dentro de cualquier procedimiento en que se solicite un remedio declaratorio, siempre que una sentencia o decreto haya de poner fin a la controversia **o despejar una incertidumbre.** 32 LPRA Ap. V, R.59.2. (énfasis suplido). El Tribunal Supremo hizo eco a este inciso cuando declaró que la sentencia declaratoria es "aquella que se dicta cuando existe una controversia sustancial entre partes con intereses legales adversos, con el propósito de disipar la incertidumbre jurídica". *Municipio de Fajardo v. Secretario de Justicia*, 187 DPR 245, 254 (2012) (citando a R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil*, 5ta ed., San Juan, Ed. LexisNexis, 2010, Sec. 6001, pág. 560).

**C.     Sentencia Sumaria**

La sentencia sumaria es un mecanismo procesal provisto por la Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, que promueve la solución justa, rápida y económica de las controversias. Este mecanismo, tiene como objetivo el de prescindir de la celebración del juicio plenario cuando no existe controversia sustancial de hechos esenciales y pertinentes, por lo que lo único que queda por parte del tribunal es aplicar el derecho. *Nieves Díaz v. González Massas*, 178 DPR 820, 847 (2010); *Lugo Montalvo v. Sol Meliá Vacation Club*, 194 DPR 209, 225 (2015). Al evaluar la conveniencia de conceder el recurso, se considera como un hecho esencial y pertinente, aquel que puede afectar el resultado de la reclamación acorde al derecho sustantivo aplicable. *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010). La precitada Regla 36 de Procedimiento Civil, *supra,* establece que la parte promovente deberá exponer un

listado de hechos no controvertidos, desglosándolos en párrafos debidamente numerados y; para cada uno de ellos, especificar la página o el párrafo de la declaración jurada u otra prueba admisible que lo apoya. A su vez, la parte que se opone a la moción de sentencia sumaria estará obligada a citar específicamente los párrafos según enumerados por el promovente que entiende están en controversia y; para cada uno de los que pretende controvertir, detallar la evidencia admisible que sostiene su impugnación, con cita a la página o sección pertinente. *Meléndez González, et al. v. M. Cuebas*, 193 DPR 100, 110-111 (2015); *SLG Zapata Rivera, v. J.F. Montalvo*, 189 DPR 414, 434 (2013). Sobre lo anterior, el Tribunal Supremo de Puerto Rico ha manifestado que la parte que solicita la sentencia sumaria tiene que establecer su derecho con claridad y tiene que demostrar que no existe controversia sustancial sobre ningún hecho material. *Quest Diagnostics v. Municipio de San Juan*, 175 DPR 994, 1003 (2009). Es decir, que no existe controversia sobre ningún componente de la causa de acción. Mientras, la parte que se opone no puede descansar exclusivamente en sus alegaciones ni tomar una actitud pasiva. *Toro Avilés v. P.R. Telephone Co.*, 177 DPR 369, 383 (2009). Por el contrario, tiene que controvertir la prueba presentada por la parte solicitante, a fin de demostrar que, sí existe controversia real sustancial sobre los hechos materiales del caso en cuestión. *González Aristud v. Hospital Pavía*, 168 DPR 127, 138 (2006). Precisamos que, para que proceda una moción de sentencia sumaria, no sólo se requiere la inexistencia de hechos en controversia; sino que la sentencia tiene que proceder conforme al derecho sustantivo aplicable. *Ortiz v. Holsum*, 190 DPR 511, 525 (2014). Por otra parte, el mismo precepto reglamentario dispone que "[d]icha sentencia podrá dictarse a favor o en contra de cualquier parte en el pleito". 32 LPRA Ap. V, R. 36.3. Al considerar una moción de sentencia sumaria, si la parte promovida no

controvierte los hechos que presenta la parte promovente, los mismos se tendrán por ciertos. *Díaz Rivera v. Srio. de Hacienda*, 168 DPR 1, 27 (2006). Así pues, nuestro más alto Foro ha aclarado que "a menos que las alegaciones contenidas en la moción de sentencia sumaria queden debidamente controvertidas, estas podrían ser admitidas y, de proceder en derecho su reclamo, podría dictarse sentencia sumaria a favor de quien promueve". *Meléndez González, et al. v. M. Cuebas, supra*, pág. 137. Sin embargo, "toda inferencia razonable que se realice a base de los hechos y documentos presentados, en apoyo y en oposición a la solicitud de que se dicte sentencia sumariamente, debe tomarse desde el punto de vista más favorable al que se opone a la misma". *ELA v. Cole*, 164 DPR 608, 626 (2005). Ahora bien, este Tribunal de Apelaciones se encuentra en la misma posición que el Tribunal de Primera Instancia al momento de revisar solicitudes de sentencia sumaria. *Meléndez González, et al. v. M. Cuebas, supra*, pág. 118. La revisión que este Foro apelativo realizará de las sentencias sumarias se considera de novo; por lo que habremos de examinar el expediente de la manera más favorable hacia la parte que se opuso a la moción de sentencia sumaria en el foro primario, y llevar a cabo todas las inferencias permisibles a favor de esta. *Id.* Así pues, al revisar la determinación del Foro primario respecto a una sentencia sumaria, estamos limitados de dos maneras: (1) sólo podemos considerar los documentos que se presentaron ante el foro de primera instancia; y (2) sólo podemos determinar si existe o no alguna controversia genuina de hechos materiales y esenciales; y si el derecho se aplicó de forma correcta. *Id.*

**III.**

Hula solicita que revoquemos la *Sentencia* emitida por el foro primario y declaremos con lugar la solicitud de sentencia sumaria. En síntesis, argumenta en su primer señalamiento de error que el

foro primario erró al determinar que la sentencia declaratoria no era el medio adecuado para disponer de la controversia planteada en el caso, toda vez que anteriormente había declarado sin lugar una solicitud de desestimación que argumentaba la improcedencia del mecanismo. Por tanto, levantó como defensa la Doctrina de la Ley del Caso y adujo que, al foro primario estar impedido de revisar la adecuación del mecanismo de sentencia declaratoria, procedía declarar con lugar la *Moción de Sentencia Sumaria.* Añadió que el desestimar la acción por una controversia ya resuelta tras años de litigio, y luego de culminado el descubrimiento de prueba, constituye un fracaso de la justicia.

En cuanto a su segundo señalamiento de error, entiende Hula que erró el TPI al controvertir infundadamente hechos no controvertidos y al idear controversias que no estaban ante su consideración. Alegó, además, que los hechos presentados en su *Moción de Sentencia Sumaria* se dieron por admitidos ya que la Sucesión presentó su oposición a la moción de sentencia sumaria en incumplimiento con los requisitos de la Regla 36 de Procedimiento Civil, *supra,* hecho que determinó el foro primario.[4] Por todo lo anterior, y considerando la alegada ausencia de hechos materiales controvertidos, entiende Hula que el TPI debió declarar con lugar su petición de sentencia sumaria.

Por su parte, la Sucesión arguye que el foro primario actuó conforme a derecho al desestimar la acción de sentencia declaratoria pues esta no hubiera puesto fin a la controversia que originó el pleito. Asimismo, estima que actuó correctamente al declarar sin lugar la moción de sentencia sumaria, ante la insuficiencia y ausencia de méritos de la prueba presentada.

A continuación, la discusión del primer señalamiento de error. Como explicamos, la Doctrina de la Ley del Caso tiene como fin

---

[4] *Sentencia* de 14 de marzo de 2023, pág. 1.

evitar dictámenes contradictorios al prohibir que se re-litiguen controversias ya resueltas. Aunque esta doctrina no es absoluta, los tribunales solo pueden descartar la ley del caso en situaciones excepcionales, cuando no hacerlo transgreda los principios básicos de la justicia. En el presente caso, la idoneidad del mecanismo de la sentencia declaratoria fue atendida en sus méritos hace años. De un examen del expediente no surgen circunstancias que justifiquen la revocación del dictamen pues la determinación del TPI no fue errónea o capaz de causar grave injusticia. Por tanto, resolvemos que erró el TPI al decretar que el mecanismo de sentencia sumaria era inadecuado.

Procedemos con la discusión del segundo señalamiento de error. Surge del expediente que las partes estipularon la siguiente prueba en el Informe de Conferencia con Antelación al Juico: (1)"mediante Escritura Pública Núm. Uno (1) de Compraventa otorgada el día 5 de febrero de 2019 en San Juan, Puerto Rico, ante la Notario María Luisa Fuster Zalduondo, Hula adquirió del Gobierno de Puerto Rico los terrenos de la antigua Escuela Luis T. Baliñas en Aguas Buenas donde ubica la edificación de los demandados";[5] (2) Certificación del Registro de la Propiedad Inmueble relacionada con la Finca #915, objeto del pleito de autos, en la cual figura Hula como titular de la finca;[6] (3) y el Plano de Mensura y Diagrama preparado por el Agrimensor Henry Rodríguez Molina, y la Declaración Jurada correspondiente, en la cual certifica que la estructura de la Sucesión ubica dentro de la finca.[7]

No empece a lo anterior, el foro primario entendió que existía controversia con relación a los límites del predio perteneciente a Hula, y a su entender, la prueba sometida en la *Moción de Sentencia*

---

[5] *Informe de Conferencia con Antelación al Juicio*, Anejo 9, p. 47, estipulación núm. 3.
[6] *Id.* Estipulación núm. 4; Anejo 2, *Moción de Sentencia Sumaria.*
[7] *Id.* Estipulación 2; Anejo 12-13, Moción de Sentencia Sumaria.

*Sumaria,* entiéndase el plano preparado por el Agrimensor Henry Rodríguez y su declaración jurada, era insuficiente para concluir que la Apelada ocupaba parte de la finca adquirida por Hula.

Luego de un examen *de novo* de la *Moción de Sentencia Sumaria,* resolvemos que, según concluyó el foro primario, existen hechos materiales en controversia que impiden dictar sentencia sumaria.

Según la *Sentencia* del foro primario, los hechos sobre los que no hay controversia y los que adoptamos, son los siguientes:

1. Mediante la Escritura Núm. Seis de 26 de enero de 1918 ante el Notario Pedro Armando Rivera, la Junta Escolar del Municipio de Aguas Buenas cedió al Gobierno de Puerto Rico el terreno donde se ubicó a la Escuela Luis T. Baliñas.

2. En algún momento posterior, la fenecida Anastacia López Flores construyó una estructura residencial en parte del terreno aledaño a donde ubicaba la referida Escuela Luis T. Baliñas.

3. Dicha estructura tiene servicio de luz registrado en la Autoridad de Energía Eléctrica desde el año 1957.

4. Tomando dicha fecha como punto de partida, al momento de la radicación de la demanda, dicha estructura llevaba construida y ocupada por la Sucn. López-Flores por unos sesenta y siete (67) años.

5. La Sucn. López-Flores acepta que la construcción de la estructura se hizo en suelo ajeno.

6. Anastacia López Flores y su sucesión han estado bajo el entendido que la estructura construida por ésta ubica en un terreno del Municipio de Aguas Buenas.

7. La ocupación de la propiedad en controversia por Anastacia López Flores y su sucesión siempre ha sido de conocimiento público.

8. Anastacia López Flores y su familia eran conocidos en Aguas Buenas.

9. A Anastacia López Flores la conocían como Doña Tasín.

10. Ésta última tenía una tiendita de dulces que daba hacia la cancha de la escuela, y vendía los mismos a estudiantes, padres y al personal de ésta.

11. Anastacia López Flores compraba mercancía para su tiendita al señor Pablo Quiñones de Pablo Cash & Carry, ahora Supermercado Econo, y perteneciente a la parte demandante.

12. El hijo de Anastasia López Flores, Francisco Planas López, fue el único mecánico en el Barrio Mulas por años y le arreglaba vehículos al señor Pablo Quiñones.

13. El 29 de junio de 1985 el Notario Nicolás Díaz Ruiz otorgó la Escritura Núm. 28 sobre Acta de Edificación y Ratificación de Uso de Superficie, en la cual Anastacia López Flores reconoció haber autorizado a su hijo Francisco Planas López y a su esposa Esther M. Ortiz Vázquez a construir una residencia en el techo de su propiedad.

14. Se indicó en dicha escritura que Anastacia López Flores construyó en la finca:

> "RÚSTICA: Predio de terreno radicado en el barrio Mulas del término municipal de Aguas Buenas, Puerto Rico con una cabida de 25.1886 metros cuadrados en lindes por el norte en 14.901 metros con la carretera Estatal 174 que conduce de Aguas Buenas a Bayamón, por el Sur en 18 metros con terrenos del Departamento de Instrucción Pública; por el Este en 16.601 metros con el solar de Juan Alvelo y por el Oeste en 14.802 metros con solar de Eduardo Fernández."

15. Se indicó, además, que "dicha propiedad supuestamente pertenece al Municipio de Aguas Buenas, pero la compareciente de la primera parte está en camino a prescribir dicha propiedad por usucapión".

16. En la referida escritura, se describió la estructura residencial como: "Residencia: De dos (2) plantas de hormigón y bloques, compuesta de cuatro (4) cuartos dormitorios, sala, comedor, cocina, un (1) baño, balcón, marquesina y tiene rejas."

17. Igualmente, se describió la propiedad construida por su hijo y esposa como: "Residencia: De hormigón y bloques, compuesta de tres (3) cuartos dormitorios, sala, comedor, cocina, un (1) baño, terraza."

18. La propiedad en controversia está registrada en el Centro de Recaudación de Ingresos Municipales (en adelante CRIM) bajo el número de catastro 198-071-068-10-005 y el remanente bajo el número 198-071-068-84-000.

19. La Escuela Luis T. Baliñas fue declarada en desuso por el Departamento de Educación.

20. El 19 de diciembre de 2018 el Comité de Evaluación y Disposición de Bienes Inmuebles de la Rama Ejecutiva del Gobierno de Puerto Rico emitió la Resolución 2018-24, autorizando la venta de la propiedad inmueble donde ubicaba la Escuela Luis T. Baliñas por el precio de $400,000.00.

21. El 5 de febrero de 2019, ante la Notario María Luisa Fuster Zalduondo, se otorgó la Escritura Núm. Uno (1) de Compraventa en la cual el Gobierno de Puerto Rico vendió a Hula el terreno donde ubicaba la Escuela Luis. T. Baliñas.

22. En dicha escritura, la propiedad fue descrita como:

"Rústica: Parcela de terreno localizada en el barrio Mulas de Aguas Buenas, compuesta de tres cuerdas (3 cdas.) equivalentes a Una hectárea, Diecisiete áreas y Noventa y Una centiáreas (1H, 17ª, 91CA), lindantes por el Norte, con el camino vecinal Juan Asencio y terrenos de la Junta Escolar de Aguas Buenas; por el Sur y el Este, con la finca que se segrega, propiedad de Luis Tomás Baliñas y Ruiz; y por el Oeste, con el mismo señor Baliñas y terrenos de la Junta Escolar de Aguas Buenas."

23. Se indica, además, que esta propiedad está inscrita en el Registro de la Propiedad, sección Segunda de Caguas, en el Folio 73 del Tomo 19 de Aguas Buenas, Finca Núm. 915 y que su número de catastro es 198-071-068-10.

24. El ingeniero Henry Rodríguez Molina fue contratado por Hula para realizar una mensura del terreno en controversia, ubicado

en la carretera PR 174, Km 21.1, en el Barrio Mulas del Municipio de Aguas Buenas.

25. Para dicha mensura, éste revisó el catastro digital del CRIM y, a base de su examen de dicho mapa catastral digital, preparó un plano de la propiedad en cuestión.

26. El ingeniero Henry Rodríguez Molina concluyó que la estructura objeto del presente pleito ubica dentro del predio de terreno adquirido por Hula.

27. El ingeniero concluyó que la estructura ubica en un área de terreno que era baldío.

28. El 2 de diciembre de 2019 Hula presentó la acción de epígrafe en contra de la Sucn. López Flores.

Por otro lado, los hechos esenciales y pertinentes sobre los cuales si hay controversia sustancial son los siguientes:

1. La porción de terreno que específicamente fue donada al Gobierno de Puerto Rico por la Junta Escolar del Municipio de Aguas Buenas mediante la antes mencionada Escritura Núm. Seis (6) de 26 de enero de 1918, otorgada ante el Notario Pedro Armando Rivera.

2. Qué remanente quedó perteneciente a la Junta Escolar del Municipio de Aguas Buenas, si alguno.

3. La fecha en que Anastacia López Flores comenzó a ocupar la parte del terreno aledaña a la Escuela Luis T. Baliñas, y a construir la referida estructura en controversia.

4. Con qué autorización, si alguna, procedió a construir.

5. La fecha en que la Escuela Luis T. Baliñas fue construida, con anterioridad o posterioridad a la estructura de Anastacia López Flores.

6. Habiendo dos números de catastro provistos por la Sucn. López-Flores, a qué parcela específicamente pertenece cada uno,

cuáles estructuras ubican en cada parcela y bajo qué dueño están inscritas.

7. La información que consta en el Registro de la Propiedad con relación a ambos números de catastro.

8. La documentación que fue provista por Anastacia López Flores al CRIM para probar titularidad sobre la estructura en controversia y que le permitió su inscripción, si alguna.

9. La documentación que fue provista por Anastacia López Flores a la Autoridad de Energía Eléctrica para probar titularidad o autorización para residir la estructura, a fin de que se instalara el servicio de luz, si alguna.

10. La descripción específica de los puntos que identifican las colindancias del predio de terreno donde ubicaba la Escuela Luis T. Baliñas.

11. La corrección de la inscripción de la estructura en el CRIM dado que, de una revisión de la información del Catastro Digital que indica HULA en su escrito surge que ésta se encuentra ubicada en una parcela separada del terreno de la Escuela Luis T. Baliñas y no indica tener titular alguno.

12. Qué acción, si alguna, realizó el Departamento de Educación con relación a la ocupación de la porción de terreno en controversia.

13. Qué acción, si alguna, realizó el Municipio de Aguas Buenas y/o la Junta Escolar con relación a la ocupación de la porción de terreno en controversia.

14. Qué verificación o estudio de título, si alguno, hizo el Gobierno de Puerto Rico previo a la venta del terreno donde ubicaba la Escuela Luis T. Baliñas.

15. La representación que le hicieran a Hula en torno al terreno a ser vendido.

16. El conocimiento previo que tuviese Hula con relación a la situación del predio en controversia y de la Sucn. López-Flores.

17. Si en esta acción se incluyeron a todas las partes indispensables.

Consecuentemente, procede la devolución del caso al TPI para que se atiendan en el proceso ordinario de Sentencia Declaratoria, las controversias concernientes a la ubicación de la edificación perteneciente a la Apelada con relación a la finca adquirida por la Apelante, la petición de accesión, la supuesta mala fe de la Sucesión al construir la edificación y los honorarios por temeridad.

**IV.**

Por los fundamentos antes expuestos, *revocamos* la *Sentencia* apelada en cuanto a la desestimación de la demanda por el fundamento de la idoneidad del mecanismo de sentencia declaratoria. Por otro lado, *confirmamos* la declaración del *No Ha Lugar* de la *Moción de Sentencia Sumaria,* y, en consecuencia, devolvemos el caso al foro primario para la continuación de los procedimientos de manera compatible con esta *Sentencia.*

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones